UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALLEN TRENT CARTER,<br><br>Defendant. | No.  1:13-cr-00045-JLT-SKO<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE<br><br>(Doc. 36) |

Pending before the Court is Defendant Allen Trent Carter's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The motion is largely based on Carter's medical conditions and the risks allegedly posed to him by the ongoing coronavirus ("COVID-19") outbreak. (Doc. 36.) For the reasons explained below, Carter's motion is **DENIED**.

## BACKGROUND

On October 21, 2013, Carter pled guilty to one count of receipt and distribution of a visual depiction of a minor engaged in sexually explicit content in violation of 18 U.S.C. § 2252(a)(2). (Docs. 20, 22.) On January 13, 2014, Judge Lawrence J. O'Neill sentenced Cater to 240 months of imprisonment followed by a lifetime of supervised release. (Docs. 28, 30.) Carter is currently serving his sentence at Englewood FCI and has a release date in 2030. *Find an inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited July 19, 2022.) To date, Carter has served less than half of his 240-month sentence. (Doc. 43-1 at 2–3.) On September 23, 2021,

1

Carter filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. 36.)  The government opposed the motion, and Carter filed a reply.  (Docs. 43, 46 and 48.)

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances.").  Those limited circumstances include compassionate release in extraordinary cases.  *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020).  Under the First Step Act of 2018 ("the FSA") imprisoned defendants may bring their own motions for compassionate release in the district court.  18 U.S.C. § 3582(c)(1)(A) (2018).  In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, [] reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i)   extraordinary and compelling reasons warrant such a reduction; or
>
> (ii)  the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).

The policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13;[2] *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, the Ninth Circuit has held "that the current version of U.S.S.G. §1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). "In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *Id.* The Ninth Circuit clarified that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

In the past, when moving for relief under 18 U.S.C. § 3582(c), courts recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts have agreed that the burden remains with the defendant. *See, e.g.*, *See United States v. Becerra*, No. 18-0080, 2021 WL 53542, at *3 (E.D. Cal. Feb. 12, 2021); *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020).

/////

/////

---

[2] The Sentencing Guidelines also require that, to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

3

# ANALYSIS

To evaluate a request for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), a court must consider three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id.*

*United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019); *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *United States v. Parker*, 461 F. Supp. 3d 966, 970 (C.D. Cal. 2020); *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

**A.     Administrative Exhaustion**

Carter submitted a request for compassionate release to the Warden on May 24, 2021. (Docs. 36 at 2; 43 at 5.)  The Warden denied this request on June 24, 2021. (*Id.*)  The government concedes that Carter has satisfied the exhaustion requirement. (Doc. 43 at 5.) Therefore, the Court will address the merits of Carter's motion.

**B.     Extraordinary and Compelling Reasons**

A defendant's medical condition may warrant compassionate release where he or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i).  Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.*  In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

4

> The defendant is
>
> > (I)   suffering from a serious physical or medical condition,
> >
> > (II)  suffering from a serious functional or cognitive impairment, or
> >
> > (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1 (A)(ii).

When a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, some courts have concluded that the risks posed by COVID-19 tip the scale in favor of release. *See, e.g.*, *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405–06 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence."). COVID-19 may constitute an extraordinary and compelling circumstance where defendants demonstrate that (1) their health conditions put them at an increased risk of severe COVID-19 and (2) they are at risk of infection because their facility is currently suffering from a COVID-19 outbreak or is at risk of an outbreak because, for example, it is a congregate living facility in which inmates and staff cannot consistently maintain safe physical distances. *See, e.g.*, *United States v. Terraciano*, 492 F. Supp. 3d 1082, 1085–86 (E.D. Cal. 2020); *United States v. Smith*, 538 F. Supp. 3d 990 (E.D. Cal. 2021)

Compassionate release may also be warranted based on a defendant's age and other related factors. In these situations, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[3] These

---

[3] In determining a defendant's projected release date, courts may take into account any "good time credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1). *See, e.g.*, *United States v. Burrill*, 445 F. Supp. 3d 22, 24 n.1 (N.D. Cal. 2020).

factors are irrelevant to Carter, who is only 62 and has not yet served 10 years of his imprisonment term.  Further, Carter has failed to demonstrate that his health conditions are severe enough to warrant release.

BOP records indicate that Carter is afflicted by and being treated for essential (primary) hypertension, obesity, and Type 2 diabetes. (Doc. 40 at 1–6.)  He was also recently diagnosed with chronic kidney disease (stage 4). (Doc. 43 at 8.)  Carter argues that these conditions put him at an increased risk of severe COVID-19 that warrants his compassionate release. (Doc. 36 at 4–9.)  To support this contention, Carter relies almost exclusively on scientific studies and articles, as well as case law, that analyzed COVID-19 risks before vaccines were widely available. (Doc. 36 at 4–8, citing sources.)

Carter acknowledges that he received both doses of the Moderna vaccine in March and April 2021. (Doc. 40 at 9.)  When a vaccinated defendant seeks compassionate release, he must offer evidence of an elevated personal risk of severe harm despite the protections of vaccination. *United States v. Stone*, 2022 WL 2483755, at *2 (E.D. Cal. Jul. 6, 2022) (citing *United States v. Smith*, 538 F. Supp. 3d at 993–1000.)

When defendants offer no evidence that vaccination will not protect them against severe harm from COVID-19 and do not show that the facilities where they are currently incarcerated are experiencing a surge in infections caused by a SARS-CoV-2 variant, courts deny motions more often than not. *See*, *e.g.*, *Smith*, 538 F. Supp. 3d at *997; *United States v. Andrade*, No. 17-00180, 2022 WL 172933, at *2 (E.D. Cal. Jan. 19, 2022); *see also, e.g.*, *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); *United States v. Decano*, No. 21-10099, 2021 WL 4922348 (9th Cir. Oct. 21, 2021) (unpublished) (affirming denial of compassionate release to fully vaccinated defendant).

The Court recognizes that chronic kidney disease, diabetes, and obesity are factors that can increase one's likelihood of experiencing COVID-19 complications. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CENTERS FOR DISEASE

CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 19, 2022).  However, Carter has provided no data about COVID-19 transmission or risk in his current facility,[4] and he fails to offer argument as to why his conditions put him at high risk of COVID-19 complications *despite* his vaccinated status.  Crucially, Carter reports that he previously contracted COVID-19, pre-vaccination, and did not report any complications caused by his underlying conditions.  (Doc. 40 at 7.)  Further, Carter does not contest the government's assertion that his conditions are being monitored and properly treated while he is incarcerated.  On this record, the Court cannot conclude that Carter has established extraordinary and compelling reasons warranting his release.

**C.     Consistency with the § 3553(a) Factors**

Even assuming that Carter's medical conditions may, with more evidence, weigh in favor of relief, the § 3553(a) factors do not.  *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A), (C)-(D).  Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

Several district courts have analyzed similar motions in the midst of the COVID-19 pandemic and concluded that a defendant convicted of child pornography offenses should not be

---

[4] The statistics that Carter provides regarding COVID-19 rates "in prisons" compared to "the general population" are too general to be relevant for the Court's risk assessment. (Docs. 36 at 8.)

released. *See, e.g.*, *United States v. Mitchell*, No. 2:12-cr-0401 (KJM), 2020 WL 2770070, at *3–4 (E.D. Cal. May 28, 2020) (denying motion for compassionate release due to the nature of a conviction for receiving child pornography, lack of rehabilitation evidence, and term served at time of the motion); *United States v. Feiling*, 435 F. Supp. 3d 832, 841 (E.D. Va. 2020) (denying motion for compassionate release of defendant convicted of possession of child pornography in part because defendant committed his instant offense while at home, meaning that release, even with conditions, would be less likely to protect the public); *United States v. Miezin*, 456 F. Supp. 3d 911, 916 (N.D. Ohio 2020) (declining to release a defendant convicted of receipt and distribution of child pornography, in part because "[i]n today's society with smartphones, tablets, laptops, smart TVs, and countless other devices, it would not be possible to . . . eliminate his ability to engage in his prior criminal conduct" outside of custody); *United States v. Hylander*, No. 18-CR-60017, 2020 WL 1915950, at *3 (S.D. Fla. Apr. 20, 2020) (denying motion for compassionate release of defendant convicted of possession of child pornography because defendant would be released to "precisely the location in which the offense for which he was convicted was committed, [] present[ing] a concern that Defendant will reoffend.")

      Like the defendants in those cases, Carter's misconduct took place online. And his offense conduct was particularly troubling. The Presentence Report ("PSR") noted that Carter's conduct relevant conduct included more than 600 offending images, some of which involved prepubescent minors engaged in sexual acts with adults. (PSR, Doc. 26 at 5–7; *see also* Plea Agreement, Doc. 26 at 27.) Carter also engaged in conversation with another abuser in which he "provided input" on how a developmentally-disabled prepubescent minor should be abused. (*Id.* at 7–8.) While Carter mentions his lack of disciplinary history while incarcerated, as well as his effort to obtain an education in prison, he has not demonstrated sufficient rehabilitation to overcome the seriousness of his offense and the potential danger to the public if he were to be released. (*See* Doc. 36 at 9.) In the Court's view, any sentence reduction in this case would not reflect the seriousness of Carter's offenses, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct.

/////

**CONCLUSION**

Accordingly,

1. Defendant Carter's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), filed September 23, 2021 (Doc. 36), is **DENIED**.

IT IS SO ORDERED.

Dated:   **July 22, 2022**

UNITED STATES DISTRICT JUDGE